### SCHELL et al. v. FOOD MACHINERY CORPORATION et al.*
### No. 8218.

Circuit Court of Appeals, Fifth Circuit.
Jan. 13, 1937.

*Writ of certiorari denied 57 S. Ct. 670, 81 L. Ed. —.

386

Seiforde M. Stellwagen and Wm. J. Neale, both of Washington, D. C., Lawson Magruder and Dewey A. Dye, both of Bradenton, Fla., and Alvan B. Rowe, of Palmetto, Fla., for appellants.

O. K. Reaves, E. C. Johnson, and Morris E. White, all of Tampa, Fla., and Wm. L. Kimball, of Bradenton, Fla., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

This cause was removed to the District Court from a state court on the ground that a separable controversy appeared between citizens of different states; a motion to remand was denied and several weeks later, the state court having vacated as improvident the order of removal granted by it, the District Judge enjoined Manatee River Bank & Trust Company, the original complainant, and Frank R. Schell and Rodney B. Harvey who before removal had filed a joint answer and cross-bill, from acting further in the state court. The three named parties appeal from this interlocutory injunction under Judicial Code, § 129, as amended (28 U.S.C.A. § 227).

■ We find it necessary to examine only the question of the jurisdiction of the District Court. If it has not jurisdiction of the cause it of course should not have granted the injunction. A federal court may sometimes enjoin proceedings in a state court to protect its own jurisdiction lawfully acquired, but may not interfere even temporarily when it has none. The state court's order of removal is not conclusive, but if wrongly entered could be, as it was, rescinded. St. Louis & S. F. Ry. Co. v. Kirk, 136 Miss. 608, 101 So. 377. The refusal of the District Court to remand is also not conclusive. The jurisdiction of the District Court comes only from the law and not from its own assertion of or judgment on it, nor from any action of the state court. The refusal to remand if erroneous is reviewable by this court, ordinarily after final judgment, but also in connection with a reviewable interlocutory order. If the District Court has not jurisdiction, its activities ought at once to cease. In reviewing an interlocutory order under Judicial Code, § 129 a bill may be ordered dismissed if without equity. Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810; Meccano v. Wanamaker, 253 U.S. 136, 40 S.Ct. 463, 64 L. Ed. 822. With much more reason when federal jurisdiction is lacking ought the appellate court so to declare. Judicial Code, § 37 (28 U.S.C.A. § 80) expressly says, if at any time it appears that a removed suit "does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court * * * the said district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require." The question of federal jurisdiction is ever present and self-asserting. The court must of its own motion and even against the consent or the protest of parties consider it. Mansfield, etc., R. Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L. Ed. 462; Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690; International, etc., R. Co. v. Hoyle (C.C.A.) 149 F. 180. The District Court, in refusing to remand, found a separable controversy to be presented by the cross-bill of Schell and Harvey, citizens of Florida, on the one hand, and Food Machinery Corporation, organized under the laws of Delaware, on the other, involving more than $3,000, and justifying the removal of the entire cause. Appellants, on the other hand, say that one Jagan M. Sharma, an alien, is an actual and a necessary party to the cross-bill and to be aligned with Food Machinery Corporation in the controversy; also that the original complainant, Manatee River Bank & Trust Company, a Florida corporation, is a necessary party defendant to the cross-bill, and the presence of either Sharma or the Trust Company on the Food Corporation's side of the controversy prevents it from being one wholly between citizens of different states. The original complainant, the Trust Company, also contends that its suit rightly brought in the state court cannot be made removable later by some of the defendants getting up a separable controversy among themselves. It becomes necessary to understand the pleadings in the state court, because, since no fraudulent joinder of parties or other issue of fact was raised in the petition for removal, removability depends on the face of the pleadings.

■ On September 9, 1935, the Trust Company brought its bill against Schell, Sharma, and Food Machinery Corporation setting up that Schell and Harvey (who was not made a party) had made an agreement with Food Machinery Corporation to develop, improve, and put into commercial use a patent belonging to Schell and Harvey and to pay them certain royalties. Schell, with the consent of Harvey and Food Machinery Corporation, had assigned and set over to the Trust Company as a trustee for the benefit of certain of Schell's creditors all of Schell's right and interest in the said royalties, with directions to the Food Corporation to pay them to the Trust Company. The Trust Com-

pany was to have compensation for handling the trust. At about the same time Schell signed a written assignment of one-half of his royalties to Sharma, who was and is a chemist in the employ of Food Machinery Corporation, for executory considerations to be paid and performed by Sharma, the assignment being deposited in escrow meanwhile. Sharma's payments were to be sent to the Trust Company as trustee. The Trust Company exhibited all these contracts, alleged that it had royalties in hand of $1,557 with more constantly coming in, that it had received nothing from Sharma, but he was claiming one-half of them as his, but Schell was claiming that Sharma had defaulted in his payments and that the escrow was at an end; but that Food Machinery Corporation had deposited with the escrow agent the money which Sharma was to pay and it and Sharma had gotten possession of the assignment; although the money for it had not been paid to the Trust Company, the Food Machinery Corporation was threatening to pay Sharma his part of the royalties direct and that Sharma was so insisting; but that Schell contended that his agreement with Sharma was at an end; that the Trust Company as trustee could not safely determine what it should do either as to the money in hand or that to accrue; and it prayed for an ascertainment of the rights of the parties and a construction of its duties as trustee; for direction in handling the present and future funds; and for allowance of its commissions and of reasonable solicitor's fees. This is not a pure bill of interpleader. The complainant does not profess to have no interest in the subject-matter of dispute nor offer to pay it into court and be discharged. It has a continuing duty and an interest by way of commissions. It is a bill for direction by a trustee, seeking relief by the final decree, and whose presence is necessary to make that decree. The bill was served personally on Schell and Food Machinery Corporation in Florida, but by publication only as to Sharma. Sharma began a litigation in the courts of California. By supplemental bill the Trust Company set up that Food Machinery Corporation was about to pay all future royalties through the California courts and prayed an injunction requiring them to be paid into the Florida court. The injunction was granted. Schell answered confessing the bill and praying by way of cross relief a cancellation of his agreement with Sharma which he said the Food Machinery Corporation had paid for and had attempted to take over, and that all monies be paid into the federal court to be disbursed according to the other agreements. Food Machinery Corporation moved to dismiss the original bill, and to dissolve the temporary injunction. On a hearing the injunction was modified and then both motions were overruled. Food Machinery Company then moved to dismiss Schell's cross-bill, and answered the main bill on its merits. On January 24, 1936, by a stipulation the decree pro confesso which had been entered against Sharma was to be opened on his filing an appearance and acknowledging full jurisdiction in the Florida court of himself and the controversy and dismissing his litigation in California. The stipulation was carried out under a court order, and the same day Sharma answered to the merits, but asserted ownership in himself of one-fourth interest in the patent as well as in the royalties, praying to be relieved of his consent that the Trust Company handle the royalties and that his share be paid directly to him. The several parties made motions attacking their adversaries' pleadings, and orders were passed giving time to make better pleadings till the March, 1936, Rules day. It is thus apparent that all the litigants had submitted to the jurisdiction of the state court, and that if any of them had any right of removal, the time for its exercise had passed and had been waived by seeking relief of the state court. On March 17, 1936, Harvey, who owned the patent with Schell, asked to be allowed to intervene, asserting that he was a party to the agreement with Food Machinery Corporation and that by the contentions over it his rights were likely to be endangered. His prayer that he be allowed to become a defendant and cross-complainant with Schell was granted. They then joined in filing a new answer and cross-complaint to which latter the Trust Company, the Food Machinery Corporation, and Sharma were named parties. This pleading, without exhibits, covers 124 printed pages. Besides matters already referred to, it sets up that Food Machinery Corporation was not in good faith carrying out its contract to develop and improve the patent, but in collusion with its chemist Sharma was seeking to obtain in Sharma's name patents growing out of research for which Schell and Harvey were paying, and alleges various efforts to deceive Schell and Harvey about the business and

to get control of the patent from them by taking down the escrow which Sharma had forfeited and in other ways; that they had all the records of the patented process and research since and were seeking to deprive Schell and Harvey of the benefit of them. The prayers were to restrain temporarily the Food Machinery Company from prosecuting further the pending patent applications or disposing of or incumbering the domestic or foreign patents involved, to appoint a receiver to take over the patent proceedings, and the licensing business under the patents; and on final hearing to disburse the royalties according to the original agreements with the Trust Company; but that the escrow agreement with Sharma be canceled; and the agreement with Food Machinery Corporation to develop the patents and make licenses to be rescinded and canceled and Schell and Harvey to be restored to their original rights in the patent and its incidents. All parties acknowledged service, and a hearing for injunction and receiver was set for March 21, 1936. On that date Sharma moved to dismiss Schell's and Harvey's pleading, and Food Machinery Corporation petitioned for removal of the whole suit to the District Court because of a separable controversy in Schell's and Harvey's cross-complaint which was wholly between citizens of different states. No such separable controversy was particularly pointed out. The actions of state and federal courts followed which were mentioned in the beginning of this opinion.

■ As already stated, all original rights of removal, if any existed, expired and were waived. We do not think the suit became removable because of Harvey's entrance into the case. If it be true that Harvey and Schell could have started an independent suit against Food Machinery Corporation to cancel their agreement for development of the patent, they did not; and it is evident that by such cancellation the Trust Company and the creditors which it represents would be affected, because what Schell assigned to them was his interest in "the royalty monies due and which shall become due to

me from the Food Machinery Corporation * * * from royalty account existing as a result of an agreement made by and between the undersigned (Schell), R. B. Harvey, and Food Machinery Corporation on the 9th day of February, 1933." If that agreement be canceled the Trust Company and those it represents get no more royalties. So also Sharma's assignment reads for an undivided half-interest in Schell's "interest in the royalties under agreement with Food Machinery Corporation as above referred to," that dated February 9, 1933. Food Machinery Corporation assented to these assignments, and is bound by them. The agreement of February 9, 1933, cannot equitably be canceled without hearing these assignees of interests in it. They are indispensable parties. Shields v. Barrow, 17 How. 130, 15 L.Ed. 158. A decree of cancellation to which they are not parties would be no defense against their claims against Food Machinery Corporation for the assigned royalties; and if it would be there would not be due process of law in thus depriving the assignees of their vested interests without a hearing. The interests of the Trust Company and of Sharma are against cancellation and they must be aligned on that issue with Food Machinery Corporation. Since the Trust Company is of the same citizenship as Schell and Harvey, and since Sharma is an alien and a citizen of no state, the presence as a substantial party of either one prevents this controversy from being one wholly between citizens of different states. International, etc., R. Co. v. Hoyle (C.C.A.) 149 F. 180; Trimble v. John C. Winston Co. (C.C.A.) 56 F.(2d) 150; Merchants' Cotton-Press Co. v. Ins. Co. of N. A., 151 U.S. 368, 14 S.Ct. 367, 38 L.Ed. 195.

Aside from attacks that have been made on the removal because of a want of the statutory notice to the Trust Company and because of the failure in the petition to point out the separable controversy claimed to exist, we think no available ground of removal can be found, that the District Court acquired no jurisdiction, and that its injunction order is erroneous. The judgment is accordingly reversed, with direction to remand the cause to the state court.